# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA J. BLUE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. H-06-1347 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff Linda J. Blue's ("Blue") and Defendant Michael J. Astrue's, Commissioner of the Social Security Administration ("Commissioner"),[1] cross-motions for summary judgment. Blue appeals the determination of an Administrative Law Judge ("ALJ") that she is not entitled to receive Title II disability insurance benefits or Title XVI supplemental security income benefits. *See* 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A). Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court is of the opinion that Blue's Motion for Summary Judgment (Docket Entry No. 19) should be denied, the Commissioner's Motion for Summary Judgment (Docket Entry No. 21) should be granted, and the ALJ's decision denying benefits be affirmed.

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should therefore be substituted for Jo Anne B. Barnhart (former Commissioner) and Linda S. McMahon (interim acting Commissioner) as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   *Background*

On September 13, 2003, Blue filed an application for disability insurance benefits with the

Social Security Administration ("SSA") claiming that she had been disabled and unable to work since

August 13, 2003.  (R. 74-76).  Blue alleges that she suffers from a variety of disabling conditions,

including morbid obesity,[2] diabetes,[3] asthma,[4] heart condition, phlebitis,[5] high blood pressure, swelling

of the feet and legs, and kidney problems.[6]  (R. 89).  After being denied benefits initially and on

reconsideration (R. 35-50), on February 10, 2004, Blue requested an administrative hearing before

an ALJ   (R. 51-52).

A hearing was held on April 12, 2005, in Houston, Texas, at which time the ALJ heard

testimony from Blue, Vern O. Laing, M.D. ("Dr. Laing"), a medical expert, and Cheryl L. Swisher,

a vocational expert ("VE").  (R. 55-63, 277-309).  In a decision dated April 29, 2005, the ALJ denied

Blue's application for benefits.  (R. 11-19).  On May 27, 2005, Blue appealed the ALJ's decision to

the Appeals Council of the SSA's Office of Hearings and Appeals.  (R. 9-10).  On March 6, 2006,

---

[2] "Obesity" refers to an increase in body weight beyond the limitation of skeletal and physical requirement, as the result of an excessive accumulation of fat in the body.  *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1251 (29th ed. 2000).

[3] "Diabetes" is a chronic syndrome of impaired carbohydrate protein, and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin resistance.  *See* DORLAND'S, *supra*, at 489.

[4] "Asthma" refers to the recurrent attacks of paroxysmal dyspnea, with airway inflammation and wheezing due to spasmodic contraction of the bronchi.  *See* DORLAND'S, *supra*, at 163.

[5] "Phlebitis" refers to the inflammation of the vein.  *See* DORLAND'S, *supra*, at 1374.

[6] There appears to be scrivener's error in both the ALJ's decision (R. 14) and Blue's summary judgment motion (Docket Entry No. 19, at p. 3) because both listed Blue's impairments as schizophrenia, paranoia with psychotic features, sleep apnea and status post breast cancer.  As set forth in the record, Blue's alleged impairments are morbid obesity, diabetes, asthma, heart condition, phlebitis, high blood pressure, swelling of the feet and legs, and kidney problems.  (R. 89).  Furthermore, both the ALJ's decision (R. 14) and Blue's motion (Docket Entry No. 19, at p. 3) contend that the date of Blue's alleged onset of disability was November 10, 2002; however, her application  set forth her alleged onset date as August 13, 2003.  (R. 74).

after considering additional evidence, the Appeals Council denied Blue's request to review the ALJ's

determination.  (R. 5-8).  This rendered the ALJ's opinion the final decision of the Commissioner.

*See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Blue filed this case on April 16, 2006, seeking judicial

review of the Commissioner's denial of her claim for benefits.  *See* Docket Entry No. 1.

## II.    *Analysis*

### A.    *Statutory Bases for Benefits*

SSI benefits are authorized by Title XVI of the Act and are funded by general tax revenues.

*See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed. 2001).

The SSI Program is a general public assistance measure providing an additional resource to the aged,

blind, and disabled to assure that their income does not fall below the poverty line.  *See* 20 C.F.R.

§ 416.110.  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C.

§§ 1382(a), 1382c(a)(3)(A)-(C).  A claimant applying to the SSI program cannot receive payment

for any period of disability predating the month in which she applies for benefits, no matter how long

she has actually been disabled.  *See Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *see also*

20 C.F.R. § 416.335.  The applicable regulation provides:

> When you file an application in the month that you meet all the other requirements for
> eligibility, the earliest month for which we can pay you benefits is the month following
> the month you filed the application.  If you file an application after the month you first
> meet all the other requirements for eligibility, we cannot pay you for the month in
> which your application is filed or any months before that month.

20 C.F.R. § 416.335.  Thus, the month following an application, here, October 2003, fixes the earliest

date from which benefits can be paid.  (R. 74-76).  Eligibility for SSI payments, however, is not

dependent on insured status.  *See* 42 U.S.C. § 1382(a).

3

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes. *See also* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled*, regardless of indigence. A claimant for disability insurance can collect benefits for up to twelve months of disability prior to the filing of an application. *See* 20 C.F.R. §§ 404.131, 404.315; *Ortego v. Weinberger*, 516 F. 2d 1005, 1007 n.1 (5th Cir. 1975); *see also Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997).

While these are separate and distinct programs, applicants seeking benefits under either statutory provision must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). Under both provisions, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). Moreover, the law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).

**B.**     ***Standard of Review***

    **1.**     ***Summary Judgment***

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact.

The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo. See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

## 2. *Administrative Determination*

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and

5

less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Masterson*, 309 F.3d at 272; *Brown*, 192 F.3d at 496.

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.*

### C.   *ALJ's Determination*

An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

6

5.   If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R §§ 404.1520(f), 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *accord Boyd*, 239 F.3d at 704-05.  The claimant has the burden to prove disability under the first four steps. *See Myers*, 238 F.3d at 619.  If the claimant successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of her existing impairments, the burden shifts back to the claimant to prove that she cannot, in fact, perform the alternate work suggested. *See Boyd*, 239 F.3d at 705.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id.*

The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  An individual claiming disability benefits under the Act has the burden to prove that she suffers from a disability as defined by the Act. *See Newton*, 209 F.3d at 452; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A claimant is deemed disabled under the Act only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *accord Newton*, 209 F.3d at

452; *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); *Selders*, 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton*, 209 F.3d at 452-53; *see also* 20 C.F.R. §§ 404.1572(a)-(b), 416.972.

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also* 42 U.S.C. § 423(d)(3). "[A]n individual is 'under a disability, only if [her] impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Greenspan*, 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if she applied. *See Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's diabetes mellitus and heart problems are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has the residual functional capacity to perform a range of light work. Light work, by definition, requires sitting, standing, walking, pushing/pulling and lifting of not more than 20 pounds. (20 C.F.R. §§ 404.1567(b) and 416.967(b)). The undersigned finds that the claimant is able [to] stand and walk for a total of 6 hours in an 8-hour day. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She is restricted from climbing stairs, ropes, ladders and scaffolding. She is also restricted from kneeling, crouching and crawling.

7.     The claimant's past relevant work as companion did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8.     The claimant's medically determinable diabetes mellitus and heart problems do not prevent the claimant from performing her past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(R. 18-19). Because the ALJ determined that Blue could perform her past relevant work, he did not have to reach the fifth step of the evaluation.

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215; *Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452; *Greenspan*, 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). To determine whether the decision to deny Blue's claim for disability benefits is supported by substantial evidence, the Court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the claimant's subjective evidence of pain and disability, and

9

any corroboration by family and neighbors; and (4) the claimant's age, educational background, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496; *Martinez*, 64 F.3d at 174; *Selders*, 914 F.2d at 617.

**D.     *Issues Presented***

Blue contends that substantial evidence does not support the findings of the ALJ. Specifically, Blue argues that the ALJ improperly determined her residual functional capacity by failing to evaluate her obesity and by relying on the testimony of the vocational expert. *See* Docket Entry No. 19. Furthermore, Blue claims the Appeals Council improperly denied her request for review. *See id.* The Commissioner maintains that the ALJ's finding is supported by substantial evidence. *See* Docket Entry No. 21.

**E.     *Review of ALJ's Decision***

**1.     *Objective Medical Evidence and Opinions of Physicians***

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). If the claimant is not actually working and her impairments match or are equivalent to one of the listed impairments, she is presumed to be disabled and qualifies for benefits without further inquiry. *See id.* at 532; *see also* 20 C.F.R. § 416.920(d). When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any

such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B);

*Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The relevant regulations similarly provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. §§ 404.1523, 416.923; *see also Loza*, 219 F.3d at 393. The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531.

The claimant has the burden to prove at step three that her impairment or combination of impairments matches or is equivalent to a listed impairment. *See id.* at 530-31; *Selders*, 914 F.2d at 619 The listings describe a variety of physical and mental illnesses and abnormalities, and are typically categorized by the body system they affect. *See Zebley*, 493 U.S. at 529-30. Individual impairments are defined in terms of several specific medical signs, symptoms, or laboratory test results. *See id.* at 530. For a claimant to demonstrate that her disorder matches an Appendix 1 listing, it must meet *all* of the specified medical criteria. *See id.* An impairment, no matter how severe, does not qualify if that impairment manifests only some of the specified criteria. *See id.*

For a claimant to qualify for benefits by showing that her unlisted impairment, or combination of impairments, is equivalent to a listed impairment, she must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. *See id.* at 531 (citing 20 C.F.R. § 416.926(a)). A claimant's disability is equivalent to a listed impairment if the medical findings are

at least equal in severity and duration to the listed findings.  *See* 20 C.F.R. §§ 404 1526(a), 416.926(a).  The applicable regulations further provide:

> (1)(i)   If you have an impairment that is described in the Listing of Impairments in Appendix 1 of Subpart P of this chapter, but—
>
> (A)   You do not exhibit one or more of the medical findings specified in the particular listing, or
>
> (B)   You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;
>
> (ii)   We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.

20 C.F R. §§ 404.1526(a), 416.926(a).  Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."  *Zebley*, 493 U.S. at 531. Ultimately, the question of equivalence is an issue reserved for the Commissioner.  *See Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993); 20 C.F.R. §§ 404.1527(e), 416.927(e).

A review of the medical records submitted in connection with Blue's administrative hearing reveals a history of treatment for obesity, hypertension,[7] and diabetes.  (R. 132, 145).  On January 25, 2001, Blue visited her treating physician, Stanley Pool, M.D. ("Dr. Pool"), complaining of vomiting and stomach cramps.  (R. 162).  Blue's weight was recorded as 331 pounds and her height is 62 inches.  (R. 162).  Blue was placed on a clear liquid diet.  (R. 162).  On May 21, 2001, Blue visited Dr. Pool complaining of dizziness.  (R. 160).  At that time, Blue's weight was noted as 340 pounds.  (R. 160)  Dr. Pool's assessment was that Blue was morbidly obese and had fluid retention.

---

[7]   "Hypertension" refers to high arterial blood pressure.  *See* DORLAND'S, *supra*, at 858.

(R. 160)   A clinical pathology examination of Blue revealed a cholesterol level of 276, which was higher than the normal range.  (R. 171-172).

On July 29, 2003, Blue visited Dr. Pool complaining of fluid retention and, at that time, Blue had blood work done and a chest examination performed by D. Darell Vaughn, M.D. ("Dr. Vaughn"). Dr. Vaughn indicated the examination was limited due to Blue's obesity and reported to Dr. Pool that Blue had a history of dyspnea and that a possible infiltrate in the right lower lobe and mid to lower lung[8] could not be excluded.  (R. 132).  Dr. Vaughn did, however, report that Blue's heart was "top normal in size."  (R. 132).  Blue's blood work revealed a blood sugar level of 246, which was higher than the normal range.  (R. 167).

On August 1, 2003, Blue had a follow-up visit with Dr. Pool to discuss blood work and the chest x-ray results.  (R. 161).  Dr. Pool indicated that he wanted Blue to see a dietician as she reportedly weighed 350 pounds at that time.  (R. 161).  Five days later, on August 6, 2003, Blue went back to Dr. Pool's office because of a rash from an ant bite.  (R. 161).  On August 8, 2003, Blue reported to Dr. Pool that the rash from the ant bite had ameliorated, but she complained of blisters on her feet.  (R. 158).  During a follow-up visit on August 15, 2003, Blue complained her feet were swollen and reported that when she bent her feet, they would hurt.  (R. 158).  On August 20, 2003, Blue visited Dr. Pool, complaining of leg swelling and pain in her right leg.  (R. 159).  She underwent

---

[8] "Infiltrate" refers to "infiltration," the pathological accumulation in tissue or cells of substances not normal to it or in amounts in excess of the normal.  *See* DORLAND'S, *supra*, at 896.  In this case, doctors were not able to assess whether or not Blue had an infiltration in her mid to lower lung.  (R. 132).

a venous doppler[9] test which revealed leg edema;[10] however, there was no evidence for deep venous

thrombosis of the lower extremities.  (R. 150).  Dr. Pool made an assessment of edema in the right

lower leg and morbid obesity.  (R. 159).  Blue weighed 350 pounds at that time and had a blood

sugar level of 252.  (R. 159).  The next day, Blue still had pain in her leg and Dr. Pool prescribed

Zaroxolyn.[11]  (R. 159).  Blue went back for a follow-up with Dr. Pool on August 26, 2003, still

suffering from persistent pain in her legs and a blood sugar level of 278.  (R. 156).  On August 27,

2003, Blue visited Dr. Pool for a follow-up and her blood sugar was 224.  (R. 156).  It is not clear

from the record whether Dr. Pool reported that Blue weighed 350 or 365 pounds during that visit.

(R. 156).

On August 28, 2003, Blue underwent a cardiolite exercise stress examination[12] performed by

Periyanan Vaduganathan, M.D. ("Dr. Vaduganathan").  (R. 135).  The stress test revealed normal

results, but was stopped due to Blue's fatigue.  (R. 135).  Dr. Vaduganathan reported that Blue's

effort "was considered to be less than satisfactory" and that the test results suggested Blue suffered

from hypertension.  (R. 135).  On a progress note to Dr. Pool, Dr. Vaduganathan reported that Blue

was a "very obese female who complain[ed] of leg swelling, shortness of breath, and some atypical

---

[9] "Venous" pertains to the veins.  *See* DORLAND'S, *supra*, at 1953.  A "doppler" refers to a doppler
ultrasonography or imaging. *See id.*

[10] "Edema" refers to the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the
body, usually referring to demonstrable amounts in the subcutaneous tissues.  It may be localized due to venous
or lymphatic obstruction or increased vascular permeability, or systemic, due to heart failure or renal disease.
*See* DORLAND'S, *supra*, at 567.

[11] "Zaroxolyn" is a diuretic/saluretic/antihypertensive drug.  *See* PHYSICIANS' DESK REFERENCE 3323 (60th
ed. 2006).

[12] The "cardiolite exercise stress" examination referred to a continuous graded treadmill exercise, which lasted
2.33 minutes.  During the examination, Blue's heart rate adequately rose from 102 beats per minute at rest to
a maximum of 160 beats per minute during stress.  (R. 135).

14

chest pain " (R. 145-146).  He also reported that Blue had significant medical history of hypertension

and diabetes, that she weighed 365 pounds, that she had a leg edema, and he listed her medications

as Zestril,[13] Zaroxolyn, Glucophage XR,[14] Clarinex,[15] Lasix,[16] Amaryl,[17] and Lipitor.[18]  (R. 145-146).

On September 3, 2003, Blue underwent a spirometry[19] to which results obtained were as

follow: FVC of 2.15, and FEV1 of 1.71.  (R. 163).  Dr. Pool also reported that Blue measured 62

inches in height and that her weight was 366 pounds in the spirometry report.  (R. 163).  At that time,

Blue's blood sugar level was at 209; however, only two days later on September 5, 2003, Blue's

blood sugar level had risen to 228.  (R. 157).  On September 10, 2003, Blue was seen by Dr. Pool

for another blood sugar follow-up, at which time her weight was noted as 366 pounds and her blood

sugar was listed at 207.  (R. 154).

---

[13] "Zestril" is indicated for the treatment of hypertension.  See PHYSICIANS' DESK REFERENCE, supra, at 705.

[14] "Glucophage XR," metformin, is indicated to lower blood glucose in order to treat diabetes.  See PHYSICIANS' DESK REFERENCE , supra, at 1158-1160.

[15] "Clarinex" is indicated for the relief of nasal and non-nasal symptoms of seasonal allergic rhinitis.  See PHYSICIANS' DESK REFERENCE , supra, at 3010.

[16] "Lasix," furosemide, is indicated for the treatment of edema associated with congestive heart failure, cirrhosis of the liver, and renal disease.  See PHYSICIANS' DESK REFERENCE , supra, at 2117.

[17] "Amaryl" is indicated as an adjunct to diet and exercise to lower the blood glucose in patients with noninsulin-dependent diabetes mellitus whose hyperglycemia cannot be controlled by diet and exercise alone. Amaryl may be used concomitantly with metformin when neither, alone, suffice in adequate glycemic control. See PHYSICIANS' DESK REFERENCE , supra, at 2885.

[18] "Lipitor" is a synthetic lipid-lowering agent indicated for the prevention of cardiovascular disease.  See PHYSICIANS' DESK REFERENCE , supra, at 2495.

[19] "Spirometry" is the measurement of the breathing capacity of the lungs, such as in pulmonary function tests. See DORLAND'S, supra, at 1680.  For an individual of 62 inches (Blue's height), the FEV1 level would have to be less than or equal to 1.15 and the FVC level would have to be less than or equal to 1.35, in order for that individual to be considered disabled due to chronic pulmonary insufficiency.  See 20 C.R.R. Pt. 404, Subpt. P, App. 1, Listing 3.02; (R. 163).

On October 1, 2003, Dr. Pool signed a disability questionnaire regarding Blue's cardiovascular impairments without responding to any of the inquiries.  (R. 153).

On November 3, 2003, M. Dolan, M.D. ("Dr. Dolan") assessed Blue's physical residual functional capacity.  (R. 173).  Dr. Dolan's secondary diagnosis[20] was of diabetes mellitus and he listed another alleged impairment as obesity.  (R. 173).  He reported Blue could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk with normal breaks for about 6 hours in an 8-hour workday, sit with normal breaks for about 6 hours in an 8-hour workday, and push and/or pull unlimitedly.  (R. 174).  Dr. Dolan did not establish any visual limitations during his assessment[21] and noted Blue weighed 360 pounds, that she had a height of 5 feet, 2 inches, and that her BMI[22] was 65.8.  (R. 176, 180).

"[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan*, 38 F.3d at 237; *accord Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The opinion of a specialist generally is accorded greater weight *than* that of a non-specialist.  *See Newton*, 209 F.3d at 455; *Paul*

---

[20] The primary diagnosis is illegible as it appears to have been covered up by a sticker identifying Blue to the SSA.  (R. 173).

[21] During the administrative hearing, Blue claimed that her left eye was underdeveloped and that she could not see without her glasses; however, there is no evidence in the record to support this claim.  (R. 277-309).  Moreover, because Blue's vision can be corrected with eye glasses, the impairment is not disabling. *Glenn v. Barnhart*, 124 Fed. Appx. 828, 829 (5th Cir. 2005) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988); *Fraga v. Bowen*, 810 F.2d 1296, 1303-04 (5th Cir. 1987); *Adams v. Bowen*, 833 F.2d 509, 511-12 (5th Cir. 1987)).

[22] "BMI" stands for body mass index. *See* DORLAND'S, *supra*, at 225.  Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity, SSR 02-01P provides that a BMI is the ratio of an individual's weight in kilograms to the square of her height in meters and that a BMI of 30 or above suggests obesity. *See* SSR 02-01p, 2000 WL 628049, at *1 (SSA, Sept. 12, 2002).

*v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000). Medical opinions are given deference, however, only if those opinions are shown to be more than conclusory and supported by clinical and laboratory findings. *See Scott*, 770 F.2d at 485. Moreover, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown. *See Myers*, 238 F.3d at 621; *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; *see also Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211. It is well settled that even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *See Paul*, 29 F.3d at 211; *accord Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 455.

In the case at bar, based on the objective medical facts and opinions of physicians, there is substantial evidence in the record to support the ALJ's determination that Blue suffered from impairments which did not meet or equal the requirements of a listing. The ALJ has a duty to fully and fairly develop the record to ensure that he makes an informed decision that is based on sufficient factual evidence. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *see also Newton*, 209 F.3d at 458; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1996). The decision of an ALJ will be reversed where that decision is not supported by substantial evidence if the claimant shows "(1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock*, 84 F.3d at 728; *see also Kane*, 731 F.2d at 1220.

Here, substantial evidence demonstrates that the ALJ considered Blue's obesity in accordance with the regulations.  During the administrative hearing the ALJ asked:

Q.     How tall are you?

A.     5'3".

Q.     And how much do you weigh?

A.     I was weighed yesterday, I weigh 375.

Q.     Okay.  What's your normal weight?

A.     My normal weight was like 240, 230, in between there.

Q.     Okay, you've picked up over 140 pounds?  And when did you pick up 140 pounds?

A.     I guess, like, over this, over the years, I guess.  Like from having children and then, like, just –

(R. 291).  The ALJ further questioned Blue regarding her obesity and what limitations she had due to her weight.  (292-297).  Contrary to Blue's contention (Docket Entry No. 19), the ALJ considered Blue's obesity and included limitations specifically addressing Blue's obesity in his decision.  (R. 11-19).  The evidence of record does not support the contention that Blue's obesity limited her ability to perform her past relevant work as a companion.  (R. 292-294, 303,  305-307).

Additionally, Blue's assertion that the ALJ failed to assess her obesity in connection with her other impairments is without merit.  When questioning the medical expert, the ALJ asked:

Q.     Okay.  Please identify the, the impairments that this claimant is suffering from and tell me whether or not she meets or equals a listing.  And, also, let's discuss her BMI, because I think it's up to about 65.

* * *

18

A.      Yes, Your Honor.  A primary impairment would be obesity.  We no longer have a listing for obesity for, to factor it in in (sic) evaluating other impairments of the body.  Other impairments of the body include peripheral edema that's probably related to the obesity.  It's been fully evaluated and there's no evidence of any, by a doctor, there's no evidence of any clotting or abnormality of the venous system.  So it would probably be what we'd call passive dependent edema that would relate to her body weight.

Q:      Uh-huh.

A:      She, there's nothing in the record that would allow us to evaluate the sleep apnea, at least, nothing that I saw.  It would not be surprising that she would need C-Pap at night, but generally that's a reversible condition and would not be considered a severe impairment.

Q:      Okay.

A.      The claimant has been evaluated for cardiac disease and has been found to have a normal cardiolite stress echo with good evidence of left vertricular function and normal injection fraction and no evidence of any ischemia or coronary disease.

Q.      Okay.  How about her diabetes?

A.      She does have diabetes, Your Honor, that's well documented in the record. But there is no evidence of any target organ involvement.  We simply have elevated blood sugars that have been at various levels, but never has she been in a coma, never has she gone into the hospital because of the high blood levels.

(R. 298-299).  The SSA removed 9.09 (obesity) from its list of impairments in 1999, currently, obesity is relevant primarily in the musculoskeletal, cardiovascular, respiratory, and mental disorders listings.  *See* SSR 02-01p, 2000 WL 628049, at *1 (SSA, Sept. 12, 2002).[23]  SSR 02-01p directs an

---

[23] Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity, SSR 02-01P was issued September 12, 2002, to provide guidance on the SSA policy concerning the evaluation of obesity in disability claims filed under Titles II and XVI of the Social Security Act.  Although Listing 9.09 (Obesity) was deleted from the Listings effective October 25, 1999, changes were made to the Listings to ensure obesity was still addressed. Paragraphs were added providing guidance about the potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular body systems.  The policy interpretation defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat."  The Ruling recognizes obesity can cause limitations in all exertional and postural functions.  It recognizes that

ALJ to consider whether obesity, alone or in combination with other impairments, causes a listing-level impairment in functioning. *See id.* Here, the ALJ extensively considered the impact of Blue's obesity on her other impairments and included limitations which he assessed to be caused by her obesity in connection with other impairments in his decision. (R. 11-19, 277-309). Therefore, the record clearly supports the ALJ's consideration of Blue's obesity in accordance with the regulations and his determination is supported by substantial evidence.

### 2.   *Subjective Complaints*

The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker,* 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, she must establish a medically determinable impairment that is capable of producing disabling pain. *See Ripley,* 67 F.3d at 556 (citing 20 C.F.R. § 404.1529). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.* It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala,* 30 F.3d 33, 35 n.2 (5th Cir. 1994); *Falco,* 27 F.3d at 164; *Wren,* 925 F.2d at 128. The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand. *See Falco,* 27 F.3d at 164 n.18. Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v.*

---

obesity makes it harder for the chest and lungs to expand. Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. The Ruling recognizes obesity can increase the severity of coexisting or related impairments.

*Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529;

*Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985)); *accord Chambliss*, 269 F.3d at 522

(citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)); *Hampton v. Bowen*, 785 F.2d

1308, 1309 (5th Cir. 1986).

 As a matter of law, the mere fact that working may cause a claimant pain or discomfort does

not mandate a finding of disability. *See Hames*, 707 F.2d at 166; *Epps v. Harris*, 624 F.2d 1267,

1274 (5th Cir. 1980); *accord Brown v. Bowen*, 794 F.2d 703, 707 (D.C. Cir. 1986). Additionally,

the mere existence of pain does not automatically bring a finding of disability. *Harper v. Sullivan*,

887 F.2d 92, 96 (5th Cir. 1989); *Owens*, 770 F.2d at 1281. It must be determined whether substantial

evidence indicates an applicant can work despite being in pain or discomfort. *See Chambliss*, 269

F.3d at 522; *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

 For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly

unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163; *Wren*,

925 F.2d at 128. The decision arising from the ALJ's discretion to determine whether pain is

disabling is entitled to considerable deference. *See Chambliss*, 269 F.3d at 522; *Wren*, 925 F.2d at

128; *James*, 793 F.2d at 706. However, an ALJ may discount subjective complaints of pain as

inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir.

2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)).

 At the administrative hearing, Blue testified regarding her complaints of pain. (R. 277-309).

The ALJ's decision indicates that the ALJ did consider objective and subjective indicators related to

the severity of Blue's pain:

. . .the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20.C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p.

\* \* \*

The Administrative Law Judge has taken into consideration the claimant's testimony and allegations of symptoms and limitations.  The issue raised by the claimant's allegation is not the existence of limitations, but rather the degree of limitations or other subjective symptom's which the claimant experiences.  The objective clinical findings (although not the only factor to be considered) do not support the degree of functional limitations which the claimant alleges.

\* \* \*

None of the claimant's treating physicians or any other medical source has offered an assessment of the claimant's ability to sustain work.  Although the medical opinions and clinical findings contained in the evidence or record establishes that the claimant has impairments that are considered severe, the objective evidence, by itself, would indicate that the claimant is capable of performing a range of work at the light exertional level.  Thus, the undersigned finds the claimant's testimony to be unsupported by the objective findings and not credible to the extent alleged.

(R. 17-18).  Blue testified that she considered her level of pain as slightly higher than moderate and moderate when she took medication.  (R. 302).  She further testified that she was unable to tie her own shoes and that she could only bathe by sitting on the side of the bath tub due to pain in her legs when they were swollen.  (R. 292-293).  There is medical evidence to support Blue's claim that her leg swelling caused her pain; however, the record does not support a finding that the pain Blue suffered caused her significant limitations which precluded her from performing her past relevant work as a companion.  (R. 145, 159, 305-307).

Additionally, the ALJ noted that Blue's earnings record revealed low and sporadic earnings for years, a factor which, at times, suggests a lack of motivation to work and that Blue had not always been compliant with medication, which implies Blue's symptoms may not have been as limiting as she

alleged. (R. 17). Accordingly, there is substantial evidence that supports the ALJ's finding that

Blue's subjective reports of pain do not rise to the level of disability. (R. 17-19).

### 3.   *Residual Functional Capacity*

Under the Act, a person is considered disabled:

> . . . only if [her] physical or mental impairment or impairments are of such severity
> that [she] is not only unable to do [her] previous work but cannot, considering [her]
> age, education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work exists
> in the immediate area in which [she] lives, or whether a specific job vacancy exists for
> [her], or whether [she] would be hired if [she] applied for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner bears the burden of proving that a

claimant's functional capacity, age, education, and work experience allow her to perform work in the

national economy. *See Brown v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Masterson*, 309

F.3d at 272; *Watson*, 288 F.3d at 216; *Myers*, 238 F.3d at 619; *Greenspan*, 38 F.3d at 236. If the

Commissioner fulfills this burden by pointing out potential alternative employment, the claimant, in

order to prevail, must prove that she cannot perform the alternate work suggested. *See Masterson*,

309 F.3d at 272; *Boyd*, 239 F.3d at 705; *Shave*, 238 F.3d at 594; *Carey v. Apfel*, 230 F.3d 131, 135

(5th Cir. 2000).

To determine whether a claimant can return to a former job, the claimant's "residual

functional capacity" must be assessed. *See Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990);

*see also* 20 C.F.R. § 404.1545. This term of art merely represents an individual's ability to perform

activities despite the limitations imposed by an impairment. *See Villa v. Sullivan*, 895 F.2d 1019,

1023 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545. Residual functional capacity combines a

medical assessment with the descriptions by physicians, the claimant or others of any limitations on

23

the claimant's ability to work. *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *see also* 20 C.F.R. § 404.1545. When a claimant's residual functional capacity is not sufficient to permit her to continue her former work, then her age, education, and work experience must be considered in evaluating whether she is capable of performing any other work. *See Boyd*, 239 F.3d at 705; 20 C.F.R. § 404.1520. The testimony of a vocational expert is valuable in this regard, as "[he] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *accord Carey*, 230 F.3d at 145; *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

In evaluating a claimant's residual functional capacity, the Fifth Circuit has looked to SSA rulings ("SSR"). *See Myers*, 238 F.3d at 620. The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *See id.* In *Myers*, the Fifth Circuit relied on SSRs addressing residual functional capacity and exertional capacity. *See id.* In that case, the court explained:

> First, SSR 96-8p provides that a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . .  RFC involves both exertional and non-exertional factors. Exertional capacity involves seven strength demands:  sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

24

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34474-01 (July 2, 1996). The court further commented:

> Second, SSR 96-9p also provides that initially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities. . . . The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

*Id.* (internal citations omitted); *see* 61 Fed. Reg. 34478 (July 2, 1996). The court also noted that SSR 96-9p defines "exertional capacity" as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated. *See id.* To determine that an claimant can do a given type of work, the ALJ must find that the claimant can meet the job's exertional requirements on a sustained basis. *See Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir. 1983) (citing *Dubose v. Matthews*, 545 F.2d 975, 977-78 (5th Cir. 1977)).

In the case at the bar, the VE testified that Blue is capable of performing her past relevant work as a companion and that the limitations of no stooping or kneeling or crawling would not affect her ability to work as a companion. (R. 306-307). Blue argues that the ALJ erred by failing to measure the requirements of her past work against her current ability; however, the ALJ specifically included the limitations Blue had as supported by the record in his hypothetical question to the VE. (R. 305-306). The ALJ posed limitations of no stooping, kneeling, or crawling, and no working of food pedals as well as avoidance of hazardous environments, and no pushing or pulling with her lower extremities. (R. 306). The VE testified that the additional limitations would not affect Blue's ability

25

to work as a companion. (R. 307). This is in accordance with the DOT[24] listing for companion, which provides:

> Cares for the elderly, handicapped, or convalescent persons: Attends to employer's personal needs [ ]. Transacts social or business affairs [ ]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare or serve meals to employer.

Dictionary of Occupational Titles, 309.677-010 (4th ed. 1991). Further, the listing provides that the position does not require stooping, keeling, or crawling. *See id.* The ALJ further inquired whether Blue's BMI would affect her ability to perform her past relevant work, to which the medical expert testified that body mass could not necessarily relate to function without a clear showing of impairment. (R. 307-308).

The Fifth Circuit has observed that in determining a claimant's ability to work, a vocational expert " . . . is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Unlike the Dictionary of Occupational Titles, which simply gives a general description of the job duties involved, a vocational expert is able to compare the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job. *See Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). Because the hypothetical questions articulated by the ALJ reasonably incorporated the restrictions and impairments recognized by the ALJ, the ALJ properly accepted the VE's testimony that Blue could perform her past relevant work. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

---

[24] "DOT" stands for the Dictionary of Occupational Titles. *See* Dictionary of Occupational Titles (4th ed. 1991).

Accordingly, substantial evidence supports the ALJ's findings that Blue is capable of performing her past relevant work.

### 4.   *Additional Evidence*

Blue maintains that the Appeals Council erred by not evaluating additional evidence submitted in connection with her request for review. *See* Docket Entry No. 19. Contrary to Blue's contention, the Appeals Council's decision specifically addressed the additional evidence submitted by Blue and found that the information did not provide a basis for changing the ALJ's decision. (R. 5-8). Blue submitted a physical residual functional capacity questionnaire completed by Dr. Pool on October 24, 2005, in which he reported Blue to be capable of tolerating low stress jobs. (R. 210-214). Dr. Pool also reported that Blue could not stand for longer than 20 minutes, at one time; however, Blue testified during the administrative hearing that she could stand for 30 to 40 minutes. (R. 211, 293). Dr. Pool further indicated that Blue should walk around as often as 60 minutes during an 8-hour workday and that she must walk for 10 minutes each of those times. (R. 212). Dr. Pool opined, however, that Blue could only walk half a city block without rest or severe pain. (R. 212). Because the Appeals Council properly assessed the weight of this additional evidence in its decision to deny Blue's request for appeal (R. 5-8, 210-214), Blue's suggestion that the Appeals Council erred in this regard is without merit.[25]

---

[25] Blue suggests that this Court has erred by failing to review additional information submitted to the Appeals Council in accordance with *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). *See* Docket Entry No. 19. This argument is completely without merit as Blue cannot assert any error by this Court at this point.

**III.**     _**Conclusion**_

It is, therefore

**ORDERED** that Blue's Motion for Summary Judgment (Docket Entry No. 19) is **DENIED**.

It is further

**ORDERED** that Commissioner's Motion for Summary Judgment (Docket Entry No. 21) is

**GRANTED**.  It is further

**ORDERED** that the ALJ's decision is **AFFIRMED**.  Finally, it is

**ORDERED** that this matter is **DISMISSED** from the dockets of this Court.

**SIGNED** at Houston, Texas, on this the _____*19th*_____ day of June, 2007.

CALVIN BOTLEY
United States Magistrate Judge

28